Welcome to the 11th Circuit. We're happy to have you here with us today. I think you're all familiar with our timing system, but just a quick review. When the light gets to red, that means your time is up. We ask that you please wrap up your arguments immediately at that point, unless we have asked you questions. And if that's the case, we do want to hear the answers to your questions. So please do go ahead and answer those questions before you wrap up. All right. We're going to begin today with United States of America v. Frederick Bush. And we'll hear first from Mr. DeBalder. Your Honor, Joseph DeBalder on behalf of Frederick Bush. Your Honor, from the beginning of the case, consistently asserted he did not know he was violating the law when he left the courthouse. That was the contested issue in the case. However, on that contested element, the instructions were erroneous. Can I ask you a question just to sort of orient my mind? And this may be the dumbest question of all time. I'll ask the government as well. But so the indictment is pretty spare, but it mentions both statutes, 751 and 4082. Is this a 4082 case or a 751 case? How do the two statutes operate together? And the reason I ask is the point you're raising is that 4082, it seems to me on its face, requires a mens rea that's higher than what 751 says, nothing about mens rea. So maybe we imply knowledge, but 4082 seems to require more. So what kind of prosecution is this? What's the charge? Judge, the defense's position, or the appellate's position, is that this is a 4082 prosecution. And I think it's clear from the indictment, although it is sparse, the language tracks 4082A exactly. The language of 4082A and the language of the indictment are the same. And they're making it clear that they're charging a violation by failure to remain within the statute. And I think what's important there is the indictment is how they make the defendant aware of what his charges are and the government chose to charge it as the way they charged it. And so that's why it's clearly, at least to the appellant, a 4082A charge. On these facts, just out of curiosity, on these facts, could the government have brought a straight 751 charge? If they hadn't, for instance, mentioned 4082 in the indictment, hadn't mentioned willfulness in the indictment, could they have brought a straight 751? Or on these facts, is this just a 4082 case in its nature, by its very nature? Judge, I know I've seen cases that expand 751 to encompass times when there's in the halfway house. But I would assert that, even I'm looking at Bailey, which obviously the Supreme Court case related to 751. The discussion there was about the first thing that the court has to do is determine what the congressional intent was for courts to, for the law. And clearly what's the point of having 4082A if you're charging of leaving the more lax confines of a halfway house under 751? There's no point to 4082A but for this type of circumstance. So I would, my position would be you're essentially saying 4082A is surplusage. And so that would not be, would not be what the court should do. And so we're talking about the contested element. And obviously that's important for two reasons. One is, was the instruction correct? Obviously our position is it was not. The instruction took away the knowledge that the act was unlawful, which is what makes the willfulness. And I want to discuss a little bit about why I think this court should actually, on 4082A, impose a heightened, a higher, what they call the second tier, the heightened more standard of willfulness. But first, just to, on that itself, because I do think to address what I assume would be thoughts of, well, if it is willfulness, is there harmless error? I wanted to address, as I say, this is the contested issue in the trial. And so what we're talking about here is when you're doing a harmless error analysis, the court has to make a determination of if the instruction's wrong and the court, from the very beginning in this trial, said no. Even before the case started, when the discussions happened, Mr. Bush says, they was trying to do something unlawful. And that's not an exact quote, but I have the quotes in the brief. The court says, no, they just have to show that you knowingly left the facility and that you, during a time when you knew you weren't allowed to leave. There's nothing that says that you knew it was unlawful. And this is where I think it's important to think about the context of a halfway house as opposed to a prison and why it's important. If it was not unlawful, they'd just be leaving all the time. Well, they are leaving all the time. I understand. Well, they go out to work, for example. They go out to work? Yeah. Well, for an example, one of the things, if you look in one of the exhibits that the government cited was the checklist of things that they go through with a resident when they come into the halfway house. And one of them says that they're required to deal with their own medical issues. That's one of the big differences between a prison. One of the things that I think is important is in a prison and in a halfway house, one of the big distinctions of that and society is that in normal society is that there are rules and regulations that are not law violations in a prison and in a halfway house that you have to comply with that aren't necessarily law violations. And so if you sleep in the wrong bunk, that's not a law violation, but you're probably going to get in trouble either in a prison or in a halfway house if you do something like that. And so when you, with a halfway house, when you have these additional regulations that talk about when you can leave and when you can't leave, and there's a discussion about an additional thing that you have to take care of your own medical. And so if someone leaves without permission to go to the hospital, and let's say it's not for an emergency, but it's something that they need, that is a medical condition that needs to be taken care of. And when I say emergency, I mean life-threatening emergency. Let's say there's a broken leg and they go to the hospital, but they don't get permission beforehand. In fact, that would be under the instruction given in this case, that person would have to be found guilty of escape. And that's why I think this is what goes right into my heightened, why I think the heightened standard should be imposed, because these are circumstances that, in which the Supreme Court and Ratsliff talked about why they thought the heightened standard was necessary in that structuring case is because it can sometimes encompass what would be considered innocent conduct. Here, someone going to the hospital to take care of a broken leg without permission would be a violation of the law because it's not within the confines of what's agreed upon when you enter into a halfway house. That doesn't strike me as the type of thing that should be against the law if it's not willful, right? Because the whole determination is what is willful, what is the standard of willfulness that this court should impose? And so that's why it's the defense's assertion that on this statute, 4082A, the heightened standard should be the standard that's applied. Now, I will acknowledge that even the little case from the Eighth Circuit that we cite that we think supports our position does not, it just says there's a general awareness of unlawfulness. That's the standard. Under either standard in this case, I think the court should reverse, but I think when the court's considering what's the appropriate standard for analysis of 4082A, the heightened standard should be the one that the court imposes moving forward. The other thing I think is important for the consideration for the harmless error analysis, which I think the court that needs to consider is that the court in this case, during this trial, restricted all the evidence that Mr. Bush attempted to put into the trial related to his willfulness because the court didn't think that willfulness was the standard. And so the court in this case said the only thing that you need, the knowledge standard under Bailey is the standard that's going to be imposed in the jury and told to the jury that's the law. And so therefore, the court restricted any evidence that Mr. Bush attempted to put in either in his own testimony as well as the testimony of other When you're doing an analysis of whether this was harmless or not, the jury never heard that evidence to make a determination. And then the jury finding that we know that the jury made because of those explicit instructions from the court throughout the trial and then in jury instructions, the court several times during trial specifically told the jury, you need to, your finding is going to be Mr. Bush knew he wasn't allowed to leave. Doesn't mean that they found that he knew it was against the law. And that or that he was that when he left, it would be an unlawful act. And again, I think the context going back to the context of someone in a halfway house and with all of these other rules and regulations that are part of being incarcerated matter for this analysis. And that's why I think that there's the harmless. It's not harmless error. It's I think it's clearly error. The 4082a imposes a willfulness standard. It was the indictment with a charge that the government brought, tracked the language of 4082a. They chose to bring this prosecution as a 4082a. Whether they could bring it as 751, that's not the argument. They chose to bring it as a 4082a. So I don't think the court has to get into that analysis. I would also point forward to a case that the government cited, the Cheek case. I do think that there's language in there that talks about mistake of law. And I acknowledge that Cheek is a tax case that's under the highest standard. But it talks about mistake of law and how if there's a mistake in law, you can't then willfully violate the law. And I think that Cheek case is instructive in this case. Thank you, counsel. All right. We'll hear next from Ms. Acosta. Good morning, Your Honors. Winifred Acosta, Assistant U.S. Attorney on behalf of the Appellee of the United States. May it please the Court. On the first issue, Your Honors, the government's position is that district courts have broad discretion in the style and the wording of jury instructions. And here, there was no abuse of discretion. Can I ask you just the same question that I asked Mr. DeBelder? From the government's perspective, was this a 4082 prosecution? Your Honor, we charged it under 751A and 4082. That's our practice in our district. However, if you look at the statute, 4082 merely explains that the willful failure to return constitutes an escape. And then 751 says whoever escapes. So for that reason, the government charged it under both statutes. Could it have been charged simply under 751A? As I stand here today, we chose to charge it under both. So if you charged it under both, though, do you acknowledge that you had to show as a requisite to a conviction willfulness, 4082 willfulness? Because you charged willfulness and cited 4082, you had to prove it. Do you acknowledge that? Your Honor, we did try the language from 4082. But again, we also cited 751. It's our position that it was an escape under either or, either of the statutes. When it comes to willfulness, at most, the government would concede that the first tier would be applicable, not the second tier that the appellate, I'm sorry, the appellant is arguing for. But if you get even to first tier willfulness, don't you lose on the instruction question? Because the instruction doesn't say boo about willfulness, right? That's correct. No, the magical word willfulness is not included in the instruction. That is correct, Your Honor. However, our position is that the instructions that were given were proper because the district court clearly and repeatedly, once during the opening statements, and then I believe again during the direct examination of Mr. Bush, and then during the actual reading of the jury instructions, explained that the jury had to find that the defendant knew that leaving without permission and the fact that he knew that he left without permission and that he did it anyway, intentionally did it anyway, that was sufficient for the jury to find that he was guilty of the offense. No, the instruction did not specifically say willfulness, but if you look at the instructions, Mr. Bush knew he was not allowed to leave the facility without permission. But isn't that the difference between knowledge or even kind of general intent and willfulness? Even if the instruction doesn't say willfulness, by its very nature, willfulness constitutes like a knowing violation of the law, right? I know this is against the law and I'm doing it anyway. Not sort of I know I'm more generally not permitted to do it. I mean, those are just two different things and the courts have said they're two different things, right? Your Honor, we rely on the Second Circuit in Kelly where the court said that the wrongfulness of leaving without permission is readily apparent from the act itself. Right, so that would get you a 751 prosecution. That would get you a knowledge-based prosecution, but now can you get a willfulness-based prosecution on those facts? Plus, Kelly is, I mean, it's out of circuit, but it's also unpublished. Yes, that's correct. Yes, Your Honor, that's correct. We do acknowledge that. We still feel as though the language knew he was not allowed to leave and intentionally did so anyway, that that satisfies even the portion of the willfulness instruction which says voluntarily and intentionally did something the law forbids, that is with bad purpose. That language in and of itself, it amounts to the same thing substantively that there was bad purpose to do something which disobeys or disregards the law even though the word law is not in it. How do we get from the instruction that the jury would have been aware that he knew that what he was doing disobeyed the law? Again, we would argue that the fact that the instruction said knew he was not allowed, knew he was not allowed, so he had the knowledge that this is something he's not allowed to do, but then the intent kicks in, intentionally left anyway, so we have knowledge and we have intent. Right, and I'm sorry to interrupt, but I want to make sure I give you a chance to explain this. So, Mr. DeBelder is arguing that there's a difference between knowing that he can't leave because there might be house rules, halfway house rules, and knowing that leaving is against the law and it might be common sense maybe that we would think that people would know that if they're in the halfway house they can't just leave whenever they feel like it and there are regulations, but the law requires a showing of willfulness, and so how does the instruction convey to the jury that more than knowing that it was against the rules of the halfway house, but rather was against the law, was the situation there and that he violated that? We would have to argue the general awareness on of the unlawfulness would have to go to that point, Your Honor. Again, he knew that he was not allowed to leave and yet he intentionally did it anyway. He knew from the notice that he was given during the intake process. He knew also even if he didn't know at that point, which he did, he definitely knew at the point when DeBelder was arming Jonas. You might be right that there was, I think there was certainly evidence that could show that he knew it was against the law, but the question is, and the jury didn't have to necessarily believe that evidence, and if the instruction didn't convey that he had to know that it was against the law, don't we still have a problem? It remains our position, Your Honor, first of all, that the instruction itself was sufficient even without the willfulness, but even with the willfulness, the first here, just the general awareness would be sufficient. Just the general awareness that he knew that leaving without permission was something he was not allowed to do, and yet he intentionally did it anyway. Knowledge and the intent, that's our strongest argument, Your Honor. Can I maybe just ask this slightly differently? You acknowledge, candidly, which I appreciate that the instruction doesn't use the word willfulness, but I also think that you've acknowledged that the concept of willfulness means knowledge that one's action violates the law, right? This goes to Judge Rosenbaum's question, but the instruction also doesn't use the word law, right? So it doesn't say willfulness, it doesn't say law. I just don't see how you can read that instruction and think that it gets at the mens rea that 4082 entails. Well, Your Honor, if you go back to the old Fifth Circuit case in that case, both statutes were charged, 751 and 4082, and it was charged as knowingly, willfully, and unlawfully, and willfulness in that case denoted voluntary or volitional act. Voluntary and volitional act. And then if you look at Speltzer, which is another old Fifth Circuit case, it was a voluntary departure or absence from custody with the intent to avoid confinement. So if you look at those two cases and then you rely on Bailey, and in Bailey, the standard was that the defendant knew the actions would result in his leaving the facility without permission. Again, we recognize that's only under 751A, but looking at those three cases, our argument is that this instruction that was given by the district court was sufficient and it was in line with the precedent. I would have thought Brackett cut against you. I mean, Brackett says, you know, under the statutes charged in the indictment, the crime of escape or failure to return includes an element of volition. That is, the government must show that the accused failed to return knowingly, willfully, and unlawfully. So far as I can tell, your instruction here misses at least arguably two of those, the willfully and the unlawfully part. So I would have thought Brackett, you would be trying to distinguish Brackett. But it also talked about voluntary and volitional act, whether or not the defendant's conduct was voluntary and volitional. And that is represented by the instruction that the district court gave in this case. No, it did not specify unlawfully or to that matter, willfully. But our position is that the substance of the instruction that was provided was voluntary. If there are no further questions on that issue, I'd like to move to the second issue. Well, counsel hasn't raised the second issue. And so unless you want to give him an opportunity to do so, of course, feel free. Are there any further questions on the first issue? No. Okay. I will wrap up then. I think I have three minutes. Actually, you know what? I'm sorry. I'm sorry. Let me, I do actually want to ask you a question about something that Mr. DeBelder hasn't spoken about. And that is the Feretta inquiry. Here, Mr. Bush wasn't advised of the maximum penalties. And I'm wondering if that is fatal to the Feretta inquiry. We don't believe so, Your Honor. It is clear that each of the Feretta, each of the dispatric factors, they're not all required to point to a voluntary waiver. In other words, you don't need to satisfy each of the factors. In this case, the evidence is clear that the majority of the factors were satisfied. The record does not indicate that the district court addressed the statutory maximum penalties during the Feretta hearing. That is correct. However, the evidence is clear that here we have someone who is 42 years old. He completed the 10th grade. He earned a GED. He's a legal researcher in the state. He filed a 2255 motion shortly before this. Yes, Your Honor. I think that's probably why he left. I think the district court denied the 2255 challenging his former conviction. I think he left about the same time as he lost that argument. Wasn't it, did it sort of overlap? I actually, I don't. He was prosecuting a 2255 petition, motion, while he was in halfway house. And he lost that case, lost his motion, as it were, about the time that he committed this offense. I believe so, Your Honor. He also filed two of his own motions in limine, citing 414243 prior to trial. But the trick of the Feretta issue to me in this case is whether we view the issues sort of holistically, kind of in a gestalt-y kind of way. Because if you look at the entire record, this, I mean, he frankly seems pretty sophisticated to me. You know, he seems like he's doing a pretty good job. He understands the process, understands the role of standby counsel. The district court, the sort of the advice that the district court is giving him is pretty pervasive. So if you view it that way, this looks hunky-dory fine. If you view it in terms of like, let's march through the Fitzpatrick factors, I agree with Judge Rosenbaum. You get to number three and you kind of choke on it a little bit because there's just, that seems pretty important and it wasn't done. So which of those two kind of metastructures for looking at Feretta do you think should prevail? Well, Your Honor, just on that issue, the statutory max, maximum penalties, I believe that Mr. Bush had an understanding, the record shows that he had an understanding of the statutory maximum penalties, even if the district court did not address them. Because I believe he cited it in one of his, one of his motions. It was either his, he did cite the statutory maximum penalties. So he had a clear understanding. Do you know where he cited them? Was it before or after he was convicted? It was cited in his emergency hearing for the bond reduction, for release. That would have been the record 59, R59. Okay, thank you. He also cites ties to community and employment. And if I may, jumping back to the first issue, harmless error, I just wanted to dive into that really quickly. Well, sorry, but you are out of time on that. How about if I give you one minute to just sum up what you wanted to say about that? Yes, Your Honor, I'd appreciate it. Sure. Thank you. On the issue of harmless error, Your Honor, there was adequate evidence, evidence of Mr. Bush's knowledge. First, we have the intake packet. Ms. Green testified about the escape notice being in that packet. Then on top of that, we have Deputy Marshal Jonas's directive. If you do not turn yourself in within 24 hours, I'm going to charge you with escape. And Mr. Bush says he can do what he needed to do. But Deputy Marshal Jonas said that he would meet Mr. Bush anywhere and take him back, not to Keeton, not to the halfway house, but take him to Keeton. And then we also have Mr. Bush's admissions. He said that there were permissions and procedures for everything at the halfway house. He needed permission to leave. He needed a home pass to go home. He needed a work schedule in the system to go to work. He knew, he absolutely knew he was not allowed to leave. And with that, Your Honor, we feel as though there's no evidence that the outcome would have been different. There was definitely not enough evidence to support his direct defense. It was not applicable. Thank you, counsel. Mr. DeBelder, I'll give you one extra minute as well since I gave an extra minute to your colleague. Thank you, Your Honor. One thing I wanted to note about the 751 and the indictment is that's where the penalties are for this charge. And so the government would have to cite that to make the defendant aware of the penalties. And so the fact that they track the language of 4082A and then cite both statutes is not, that's common practice because they have to tell the defendant, even though you're being charged under 4082A, the penalties are in 751. And so that's why 751 would have had it been cited. That should not tell this court that this is a 751 prosecution. Counselor, your colleague says that there was a lot of evidence that shows that he knew this was against the law. And I agree that that is the case on this record. But is that enough if the instruction was wrong? And if not, why not? Well, it's not. So I think the one thing that was talked about previously was that, well, the instruction doesn't talk about the law at all. Well, instruction actually does talk about the law, and it specifically tells the jury that Mr. Bush doesn't need to know it. It specifically says he assert, Mr. Bush asserts he did not know he was leaving the, that he did not know leaving the facility even without permission would constitute the crime of escape. The government need not prove Mr. Bush knew the law of escape. Now, I admit that it's specific to escape, but that was the only time that they he doesn't need, it doesn't matter what the law, whether he knew the law or not. And this is why I started my thing by saying, my argument by saying, this is the contested element in the trial. This is the contested. So it's basically like an apprendi kind of violation if the instruction was wrong is what you're saying? Absolutely. And what I'm saying is the government in a harmless error is asking this court to be the fact finder. They're asking this court to say, we acknowledge that on the element that was contested, it was erroneously instructed, and it was a lower standard given than should have been given. And that was the defense was that they couldn't meet the higher standard. But we're going to not have a jury decide whether someone's guilty of that crime. Instead, we're just going to say this is a harmless error. So when this court deals with harmless error analysis in other matters such as evidence that was admitted that may not have appropriately been admitted, the court can make that determination, but it's not making the determination as to the element of the disputed issue of fact in the case. And so this is the whole purpose of why we have juries in this country is to have that determination made by a jury. And so that the government's asking the court to say, well, we don't need to do that in Mr. Bush's case. And so that's why I think that the court should not find harmless error with Mr. Bush. Finally, because the court asked the question about the third issue and I would just mention that in some ways with the government's argument about the raising the concern, I would agree that the biggest concern is whether he understood the charges and the penalties. Well, if the government's right that 751 was the charge and not 4082 and the heightened standard, well, then it's clear that Mr. Bush did not understand the charge that he was facing. So they're asking the court on one end to say, well, this could be a 751 prosecution, but on the other hand, say Mr. Bush knew what the charge was. And I think that would be the big concern on the Ferretti inquiry. Thank you, counsel.